LEVERE v AETNA CASUALTY & SURETY COMPANY

Docket No. 157755. Submitted September 13, 1994, at Detroit. Decided February 7, 1995, at 9:15 A.M. Leave to appeal sought.

Michael LeVere and others brought an action in the Genesee Circuit Court against Aetna Casualty & Surety Company, seeking a declaration that they were covered for personal liability under an Aetna homeowner's insurance policy that was in effect some fifteen years earlier and of which neither the plaintiffs nor the defendants could provide a copy. The court, Thomas C. Yeotis, J., granted summary disposition for the plaintiffs. Aetna appealed.

The Court of Appeals *held:*

The plaintiffs sufficiently established the existence of a homeowner's policy with evidence indicating that they had obtained an Aetna policy when they purchased their home, that they did not let the policy lapse, that the policy had not been canceled, that the mortgage records showed that the home was insured by Aetna, and that an Aetna homeowner's policy would not have been issued if it did not include personal liability coverage of at least $25,000.

Affirmed.

*Goodman, Eden, Millender & Bedrosian* (by *Richard A. Soble*), for the plaintiffs.

*Richard L. Alger, Jr.,* for the defendant.

Before: HOOD, P.J., and BRENNAN and J. A. FULLERTON,* JJ.

PER CURIAM. Defendant appeals as of right a circuit court order granting plaintiffs' motion for summary disposition in this action for a declaratory judgment. We affirm.

Cindy Nichol filed suit against plaintiffs in May

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1990 for damages resulting from an injury that occurred in May 1976 when she was five years old. Nichol alleged that plaintiff Michael LeVere, then twelve years old, asked her to hold onto one end of a spool of wire. He then threw the spool over an electrical line, causing shock and burns to Cindy. Plaintiffs Gerald LeVere and Gail Blue were Michael's parents.

Plaintiffs notified defendant Aetna Casualty & Surety Company of the filing of Nichol's claim. At first, Aetna provided an attorney to represent plaintiffs. However, in March 1991, plaintiffs were told that Aetna had been unable to locate their policy and that they should retain their own counsel. In May 1991, plaintiffs filed the instant action for a declaratory judgment, seeking to determine their rights to insurance coverage.

Each of the parties filed a motion for summary disposition under MCR 2.116(C)(10), claiming that there was no genuine issue of fact regarding the existence and terms of a homeowner's insurance policy between them. Plaintiffs' motion included affidavits and documentary evidence in support of the existence of the policy, but did not include the actual policy itself. Specifically, plaintiffs established that they had purchased their home in 1974 and had obtained a homeowner's insurance policy from Aetna that did not lapse and was not canceled. A loan statement for their mortgage indicated under the heading "Hazard Insurance" that plaintiffs had a $30,000 policy with Aetna. Further indication of a $30,000 homeowner's policy appeared in a document issued in 1977 by the mortgagee to Employee Transfer Company, which was charged with selling plaintiffs' home. The agent responsible for the policy stated in an affidavit that an Aetna homeowner's policy would have been sold in 1976 only if it included property loss

coverage, contents loss coverage, and personal liability protection of at least $25,000, which was corroborated by an admission by defendant. The agent also acknowledged that the policy number in question was an Aetna homeowner's policy. The affidavit was silent regarding whether the agency had any records of the policy. However, the agency's name was listed on the loan statement beside the Aetna policy notation.

Defendant contested the existence of a policy at the time of the injury, relying on an affidavit that it could not locate the actual policy in its records and alleging the plaintiffs had produced insufficient evidence to establish the terms of the policy. At the hearing on plaintiffs' motion for summary disposition, defense counsel stated that the policy, if it existed at all, would have been destroyed around 1978 (which means that defendant would have been unable to produce the policy even if suit had been instituted within the normal three-year period of limitation).

The trial court found that plaintiffs had established the existence of a policy of insurance with Aetna for the period in which the underlying tort occurred and that the policy provided personal liability protection in the amount of $25,000.

Defendant urges us to reverse the trial court ruling in light of this Court's holding in *Star Steel Supply Co v United States Fidelity & Guaranty Co,* 186 Mich App 475; 465 NW2d 17 (1990). While *Star Steel* supports defendant's position, we believe it was wrongly decided. In *Star Steel,* the defendant insurance company was unable to produce records of an alleged products liability policy in the plaintiff's name because any such policy would have been destroyed after five years. *Id.* at 479. In support of the existence of such a policy,

the plaintiff produced evidence very similar to the affidavits and documentary evidence presented here. See *id.* at 477-478. However, the trial judge ordered summary judgment in favor of the insurance company stating, "I'm pretty convinced myself that there was a policy here from everything I've seen, and it was with USF&G, but what was the policy and what were the terms are the real issue." *Id.* at 481. This Court affirmed. One judge dissented, noting that an issue of fact existed because the plaintiff had offered evidence that the insurer's agent had issued a products liability insurance policy to the plaintiff and that the extent of coverage, though not specifically known, was at least $500,000. *Id.* at 482-483 (McDONALD, J.).

We find the dissent in *Star Steel* persuasive and also that the facts in this case are stronger. Plaintiffs have presented evidence that they had a homeowner's insurance policy and that the amount of such coverage would have been at least $25,000 for personal liability. In addition, defendant has relied solely on the parties' inability to produce the disputed policy to avoid summary disposition. Whereas the dissent in *Star Steel* found a genuine issue of material fact, we believe the evidence here justifies the trial court's decision to go one step further and order summary disposition for plaintiffs.

Defendant also argues that plaintiffs failed to provide sufficient notice of their potential claim following Nichol's injury. Because defendant raises this argument for the first time on appeal, the issue lies outside the scope of appellate review. *Deal v Deal,* 197 Mich App 739, 741; 496 NW2d 403 (1993).

Affirmed.